949 F.2d 826
 Alfred L. HARDY, Plaintiff,
v.
GULF OIL CORPORATION, Zaire Gulf Oil Company, Gulf Oil
Exploration and Production Company and Cabinda
Gulf Oil Company, Defendants-Third Party
Plaintiffs-Appellees,
v.
BOUYGUES OFFSHORE U.S.A., INC. and Bouygues Offshore S.A.,
Defendants-Third Party Defendants-Appellants,
On and Offshore Quality Control Specialists, Inc., Defendant.
 No. 90-2061.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 7, 1992.
 
 Christopher Tompkins, David L. Campbell, Joseph L. Spilman, III, Deutsch, Kerrigan & Stiles, New Orleans, La., for defendants-third party defendants-appellants.
 Jack L. Allbritton, Fulbright & Jaworski, Houston, Tex., for Gulf Oil, Zaire Gulf Oil & Cabinda Gulf Oil.
 Appeal from the United States District Court for the Southern District of Texas.
 Before BROWN, JOHNSON and BARKSDALE, Circuit Judges.
 JOHNSON, Circuit Judge:
 
 
 1
 The posture of the parties in the instant appeal, if not entirely unprecedented, is nonetheless unusual.[1] Alfred L. Hardy ("Hardy"), the unfortunate victim of a pipeline explosion off the coast of Zaire, initiated a personal injury action against multiple defendants. He later reached settlements with all of the defendants and thus is no longer a party to this action. The defendants, principally Zaire Gulf Oil Company ("ZAGOC") and Bouygues Offshore S.A. ("BOS"), remain in this dispute and contest whether under principles of contribution and indemnity ZAGOC owes BOS any further responsibility for Hardy's injuries. After a jury trial, the district court ruled that ZAGOC owes no responsibility to BOS. Unable to conclude that the district court committed reversible error, this Court affirms.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 In early 1983 Bouygues Offshore S.A.[2] entered into a service contract with Zaire Gulf Oil Company. Under the contract, BOS agreed to emplace several submerged pipelines in an oil and gas field off the African coast. BOS additionally agreed to install a jacket[3] over the Mibale 11, a new well in the field. To permit BOS to complete its obligations safely, ZAGOC agreed to halt production from any preexisting pressurized pipelines in the Mibale field. The contract specified, however, that BOS would indemnify and hold ZAGOC harmless against all claims arising out of BOS's performance.
 
 
 3
 ZAGOC subsequently hired On and Offshore Quality Control Specialists, Inc. ("On and Offshore") to inspect and supervise BOS operations in the Mibale field. On and Offshore assigned Alfred L. Hardy to supervise the installment of the jacket on the Mibale 11 well. On the evening of March 19, 1983, Hardy came aboard a jack up barge from which BOS was driving piles into the sea bed to anchor the jacket. One of the piles came in contact with a hard object seventeen feet below the mud line. After some initial hesitation, BOS officials agreed to attempt to break through the obstruction. Unknown to the officials, the obstruction was a preexisting ZAGOC gas pipeline. The pipeline ruptured and exploded; as a result, Hardy was seriously injured.
 
 
 4
 Alleging violations of the Jones Act and general maritime law, Hardy filed an action in Texas state court against BOS and ZAGOC.[4] BOS removed the action to federal district court. ZAGOC denied responsibility for the accident and, as an alternative form of relief, asserted a crossclaim against BOS contending that their contract required BOS to indemnify ZAGOC against Hardy's claims. BOS in turn filed a crossclaim against ZAGOC seeking indemnity or contribution for any judgment rendered against BOS.[5] Prior to trial, Hardy settled his case against ZAGOC for $125,000 and agreed to indemnify ZAGOC on any claim for contribution asserted by any defendant "excepting only the claim for indemnity which has been asserted by Bouygues [BOS] against the Gulf defendants [ZAGOC]."
 
 
 5
 Hardy proceeded to trial against BOS. Following several days of trial testimony, the jury returned a verdict in Hardy's favor, finding that BOS's negligence and the unseaworthiness of its jack up barge were the sole causes of the plaintiff's injuries. The jury concluded that neither ZAGOC nor Hardy had acted negligently. The district court entered a judgment against BOS and denied BOS's claim for indemnity and contribution from ZAGOC.[6] After judgment and pending appeal, BOS settled with Hardy for an undisclosed sum.
 
 II. DISCUSSION
 
 6
 The common law has long held that each and every one of several tortfeasors is liable for the full amount of an injured plaintiff's damages. In its purest application, this rule of "joint and several liability" permits a plaintiff to obtain full legal redress from any defendant, even if that defendant's actions were not solely responsible for the plaintiff's injuries. Thus, joint and several liability can produce a seemingly inequitable result: one defendant might alone be required to bear the burden of several defendants' wrongs. The courts developed the principles of indemnity and contribution to alleviate this potentially unfair allocation of responsibility. Indemnity and contribution, although related concepts, are distinguishable. When a trial court applies indemnity principles, it permits one tortfeasor to shift all of the loss onto another tortfeasor, provided that the latter should appropriately answer for the entirety of the loss. Prosser & Keeton on The Law of Torts § 50, at 336-41 (5th ed. 1984). When the trial court applies contribution principles, it requires that each tortfeasor pay the proportion of the damages attributable to its actions. Id.
 
 
 7
 At trial in the instant case, the jury determined that ZAGOC was not negligent. As a result, the district court reasoned, BOS could not claim a legal right to either indemnity or contribution from ZAGOC because ZAGOC had committed no tort. BOS advances several arguments to support its claim that this Court should remand this case for a new trial: (1) the jury verdict that BOS's actions were the exclusive and sole cause of the accident was contrary to the weight of the law and the evidence; (2) the district court improperly failed to charge the jury regarding the legal ramifications of ZAGOC's contractual duty to shut off the gas in the area in which BOS was working; (3) the district court improperly failed to submit a jury interrogatory regarding the identity of the obstruction that BOS encountered at the pile driving site; and (4) the district court wrongfully prejudiced BOS's defense with unfair comments and selective admission of objectionable evidence. We need not address these arguments because we conclude, as a matter of law, that BOS had no right to recover indemnity or contribution from ZAGOC.
 
 
 8
 The parties are unsure whether Texas or general maritime law governs this lawsuit. The contract between BOS and ZAGOC specifies that Texas law governs the contract documents. The plaintiff premised its cause of action, however, on federal maritime principles. Rather than attempt to resolve a difficult choice of law question, this Court will examine the availability of indemnity and contribution under both Texas and general maritime law.[7]
 
 A. Texas Law
 1. Indemnity
 
 9
 There are two basic categories of indemnity under Texas law--common law and contractual. These categories of indemnity do not share equal vitality. The availability of common law indemnity, unlike contractual indemnity, is extremely limited. See Cypress Creek Utility Serv. Co. v. Muller, 640 S.W.2d 860, 864 (Tex.1982); B & B Auto Supply, Sand Pit & Trucking Co. v. Central Freight Lines, Inc., 603 S.W.2d 814, 816-17 (Tex.1980). A party that desires indemnification for the consequences of its negligence typically must contract for this protection. Ethyl Corp. v. Daniel Const. Co., 725 S.W.2d 705, 708 (Tex.1987). BOS, however, has not secured such a contractual indemnity arrangement. Therefore, this Court concludes that Texas law does not support BOS's action for indemnity from ZAGOC. We examine each of the categories of indemnity in turn.
 
 
 10
 In 1973 the Texas legislature enacted a comparative negligence statute--the former article 2212a of the Texas Revised Civil Statutes--which established a scheme of contribution among joint tortfeasors. Interpreting this statute, the Texas Supreme Court ruled in 1982 that "[a]rticle 2212a has abolished the common law doctrine of indemnity between joint tortfeasors." Cypress Creek Utility Serv. Co., 640 S.W.2d at 864. Subsequent supreme court opinions, while concluding that a vestige of common law indemnity remains, have confirmed that a defendant cannot ordinarily claim a right to common law indemnity from a joint tortfeasor.
 
 
 11
 The Texas Supreme Court has recognized only two exceptions to the rule that common law indemnity between joint tortfeasors is unavailable. First, common law indemnity survives in products liability actions to protect an innocent retailer in the chain of distribution. Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 432 (Tex.1984); General Motors Corp. v. Simmons, 558 S.W.2d 855, 860-61 (Tex.1977). Second, common law indemnity survives in negligence actions to protect a defendant whose liability is purely vicarious in nature. Aviation Office of America, Inc. v. Alexander & Alexander of Texas, Inc., 751 S.W.2d 179, 180 (Tex.1988); Bonniwell v. Beech Aircraft Corp., 663 S.W.2d 816, 819-20 (Tex.1984); Knutson v. Morton Foods, Inc., 603 S.W.2d 805, 814 (Tex.1980) (Garwood, J., concurring). Neither of these exceptions are applicable in the instant case: BOS is not an innocent retailer in the chain of distribution and its liability is not vicarious in nature.
 
 
 12
 Although the Texas legislature has effectively abrogated the common law right of indemnity, the legislature has not attempted to curtail the availability of contractual indemnity. An agreement which states that one party will indemnify another is binding and effective. No statutory or common law principles other than those that govern the construction of contracts usually alter the validity of an indemnity agreement.[8] Even contractual indemnity is not without its limits, however. The Texas courts have cautioned, for example, that contractual indemnity does not arise by implication. A party that agrees to "indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms." Ethyl Corp., 725 S.W.2d at 708.
 
 
 13
 BOS argues that the contract between it and ZAGOC requires ZAGOC to indemnify BOS in the event BOS incurs loss. The language of the contract does not support this argument. While the contract provisions state that BOS must indemnify ZAGOC and hold ZAGOC harmless against all claims arising out of the activities in the Mibale field, the contract does not contain a reciprocal provision which states that ZAGOC must indemnify BOS. Accordingly, the contract does not express "in specific terms" that ZAGOC must indemnify BOS and hold BOS harmless against all claims arising out of the activities in the Mibale field. BOS has shown no legal right to contractual indemnity under Texas law.
 
 2. Contribution
 
 14
 The Texas legislature in 1987 enacted a comprehensive comparative responsibility statute that governs all Texas negligence and strict liability actions. Tex.Civ.Prac. & Rem.Code Ann. §§ 33.001-.016 (Vernon Supp.1989). BOS argues that this comparative responsibility statute permits BOS to recover contribution from ZAGOC. We disagree. Section 33.016 of the statute authorizes a defendant to pursue contribution only from each defendant "who is not a settling person." Id. § 33.016(b) (emphasis added); see also id. § 33.015(d) ("[n]o defendant has a right of contribution against any settling person."). ZAGOC is, without question, a settling person[9]--it is undisputed that ZAGOC entered into a settlement with plaintiff Hardy prior to trial. Under the plain terms of section 33.016, the settlement between ZAGOC and Hardy eviscerates BOS's right to recover contribution from ZAGOC. See McNair v. Owens-Corning Fiberglas Corp., 890 F.2d 753, 758 (5th Cir.1989); C & H Nationwide, Inc. v. Thompson, 810 S.W.2d 259, 272 (Tex.App.--Houston [1st Dist.] 1991, n.w.h.) ("If a person is both a liable defendant and a settling person, no defendant may have a right of contribution against him.").
 
 
 15
 BOS contends that, even if it is not entitled to recover contribution from ZAGOC, it at least should have been entitled to claim a downward adjustment in the amount of the damages that the jury awarded plaintiff Hardy. And indeed, the Texas comparative responsibility statute authorizes such a downward adjustment. The statute recognizes that plaintiffs should not receive an unfair windfall from prior settlements with other liable tortfeasors. Accordingly, after the trier of fact has determined the total amount of damages that the plaintiff is entitled to recover, the district court must reduce this amount to offset the benefit that the plaintiff has received from prior settlements.[10] The court calculates the reduction on the basis of one of two measures: (1) the sum of the dollar amounts of all settlements, or (2) a sliding scale percentage of the damages. Tex.Rev.Civ.Stat.Ann. § 33.012(b)(1) & (2) (Vernon Supp.1989).[11] The non-settling defendants determine among themselves the measure of the reduction that the court must apply. Id. § 33.014. See Texas Cab Co. v. Giles, 783 S.W.2d 695, 696-97 (Tex.App.--El Paso 1989, no writ).
 
 
 16
 The district court in the instant case, apparently assuming that the jury finding that ZAGOC had not been negligent precluded a downward reduction, declined to reduce the damages that the jury awarded plaintiff Hardy. Under Texas law, this action was improper. If a liable defendant settles with the plaintiff prior to trial, the non-settling defendants have an absolute right to claim a section 33.012(b) downward reduction. The percentage of the responsibility of the settling defendant--or even the complete absence of responsibility--does not affect the availability of the downward reduction. McNair, 890 F.2d at 760.
 
 
 17
 Under the facts of this case, however, the failure of the district court to reduce the amount of damages does not require reversal. A pre-trial settlement is a complete release of the portion of the judgment attributable to the settling defendant. A defendant that settles with the plaintiff prior to trial owes no responsibility to a defendant that remains in the lawsuit and suffers an adverse judgment. Thus, if a non-settling defendant disputes the calculation of the amount of the plaintiff's recovery, it must prosecute an appeal against the plaintiff and not the settling defendant. BOS, however, has entered into a post-trial settlement with plaintiff Hardy. This settlement eliminates BOS's right to prosecute an appeal against Hardy and, consequently, waives BOS's complaint that the district court improperly refused to reduce the amount of damages that the jury awarded Hardy. Cf. Roberts v. Burkett, 802 S.W.2d 42, 45 (Tex.App.--Corpus Christi 1990, no writ) (concluding that defendants can waive right to damage reduction under Texas comparative responsibility statute).
 
 B. General Maritime Law
 1. Indemnity
 
 18
 General maritime law, like Texas law, no longer recognizes a plethora of tort indemnity theories. The availability of common law indemnity under maritime law is instead quite limited. In United States v. Reliable Transfer Co., 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), the Supreme Court abandoned the archaic concept of tort indemnity and replaced it with the doctrine of comparative fault. Indemnity between liable maritime tortfeasors is now available only "where proportionate degrees of fault cannot be measured and determined on a rational basis." Id. at 405, 95 S.Ct. at 1713.
 
 
 19
 Prior to the decision in Reliable Transfer, the courts in maritime cases either divided the damages equally amongst all liable tortfeasors or required that the "major" tortfeasor bear all of the damages. After Reliable Transfer, the courts uniformly determined that damages in most cases should be allocated according to the respective fault of the liable tortfeasors. See, e.g., Western Pacific Fisheries, Inc. v. SS PRESIDENT GRANT, 730 F.2d 1280, 1287 (9th Cir.1984); Loose v. Offshore Navigation, Inc., 670 F.2d 493, 501 (5th Cir.1982); Griffith v. Wheeling-Pittsburgh Steel Corp., 610 F.2d 116, 130 (3d Cir.1979), rev'd on other grounds, 451 U.S. 965, 101 S.Ct. 2038, 68 L.Ed.2d 343 (1981).
 
 
 20
 The opinion in Loose v. Offshore Navigation, Inc., is particularly significant. This Circuit recognized in Loose that comparative fault displaces the traditional concept of tort immunity. "A comparative fault system not only eliminates the doctrine of contributory negligence but also apportions fault among joint tortfeasors in accordance with a precise determination, not merely equally or all-or-none." 670 F.2d at 501. In the decisions that followed Loose, this Court eliminated virtually every variety of tort indemnity once available under maritime law. See Bass v. Phoenix Seadrill/78, Ltd., 749 F.2d 1154, 1167 (5th Cir.1985); Cities Serv. Co. v. Lee-Vac, Ltd., 761 F.2d 238, 241 & n. 1 (5th Cir.1985); Verrett v. McDonough Marine Serv., 705 F.2d 1437, 1443 (5th Cir.1983).
 
 
 21
 Only a handful of viable indemnity theories remain. This Court has determined, for instance, that a vicariously liable or non-negligent tortfeasor is entitled to indemnity "from a co-debtor guilty of actual fault." Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA, 761 F.2d 229, 236 (5th Cir.1985). See also Loose, 670 F.2d at 502 n. 18. In Marathon Pipe Line, this Court held that the user of a defective product which injured the plaintiff was entitled to recover indemnity from the manufacturer of the product. 761 F.2d at 236. BOS argues that it was not negligent, and therefore is entitled to indemnity under Marathon Pipe Line. This argument construes that opinion too broadly. Certainly, the Marathon Pipe Line theory of indemnity applies equally to "non-negligent tortfeasors" as well as to vicariously liable tortfeasors. Id. at 236. However, the term "non-negligent tortfeasor," as used in Marathon Pipe Line, applies only to those defendants on which the law imposes responsibility even though they committed no negligent acts. Id.[12] BOS is not such a defendant. Instead, BOS is an ordinary defendant that owes the plaintiff damages only if the jury agrees that it was negligent. An ordinary defendant, such as BOS, is adequately protected under the comparative negligence system. If the jury determines that an ordinary defendant is not negligent, then the defendant does not owe the plaintiff damages and has no need to pursue an indemnity action against a third-party defendant. If the jury determines that the defendant is negligent, and the defendant believes that the evidence does not support this determination, then the defendant can appeal the judgment in favor of the plaintiff. In either event, the general maritime law does not authorize an action for tort indemnity against a third-party defendant.[13]
 
 
 22
 Another remaining theory of indemnity is the Ryan doctrine. In Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), a longshoreman was injured when he attempted to shift cargo that a stevedore had improperly stowed. The longshoreman sued the vessel owner. The Supreme Court concluded that the vessel could recover indemnity from the stevedore because the stevedore breached a warranty of workmanlike performance implied in the contract between the vessel and the stevedore. The scope of Ryan indemnity, however, is narrow. The Fifth Circuit has been reluctant to expand the Ryan doctrine beyond its facts. See Bass, 749 F.2d at 1167; Hercules v. Stevens Shipping Co., 698 F.2d 726, 738 n. 25 (5th Cir.1983) (en banc). We decline to extend the Ryan doctrine here. This case is not the classic Ryan case in which a vessel owner, "by entrusting his vessel to a contractor who rendered the vessel unseaworthy, has been subject to absolute liability without directly contributing to the unseaworthy condition that caused the accident." Bass, 749 F.2d at 1168. BOS did not entrust the jack up barge to ZAGOC; rather, BOS remained in complete control of the barge. Even if we accept BOS's contention that ZAGOC's actions were the sole cause of Hardy's injuries, BOS's occupation of a position in which it could have minimized the risk of injury to Hardy is sufficient to render the Ryan doctrine inapposite. See Coffman v. Hawkins & Hawkins Drilling Co., 594 F.2d 152, 156 (5th Cir.1979).
 
 
 23
 A final available theory of indemnity under general maritime law is contractual indemnity. Express contractual indemnity agreements generally are enforceable under maritime law. See American Stevedores v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011 (1947). The usual rules of contractual interpretation determine the availability of indemnity under such agreements. "A maritime contract containing an indemnity agreement ... should be read as a whole and its words given their plain meaning unless the provision is ambiguous." Weathersby v. Conoco Oil Co., 752 F.2d 953, 955 (5th Cir.1984). See also Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1214 (5th Cir.1986); Lirette v. Popich Bros. Water Transp., Inc., 699 F.2d 725, 728 n. 11 (5th Cir.1983). An indemnity clause will not afford protection unless its terms are expressed unequivocally. Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 333 (5th Cir. Unit A Aug. 1981). The contract between ZAGOC and BOS does not extend BOS a right of indemnity from ZAGOC. The express terms of the contract provide that BOS must indemnify ZAGOC, but not the opposite. That is, there is no provision in the contract that ZAGOC must indemnify BOS. In the absence of an express provision that unequivocally grants BOS a right of indemnity, this Court must conclude that BOS cannot claim contractual indemnity from ZAGOC.
 
 
 24
 BOS has not demonstrated that it has a right to indemnity from ZAGOC. General maritime law recognizes few theories of indemnity. None of these few remaining theories of indemnity--including Marathon Pipe Line indemnity, Ryan indemnity, and contractual indemnity--apply in this case.
 
 2. Contribution
 
 25
 The allocation of responsibility amongst multiple tortfeasors is a common exercise in maritime personal injury cases. Surprisingly, however, there is little precedent on the proper allocation of damages when the plaintiff settles with one or more of the tortfeasors prior to trial. The questions that such a situation engenders are legion. Particularly significant is the question whether a prior settlement with a liable defendant acts as a complete bar to an action for contribution.
 
 
 26
 The Restatement (Second) of Torts, a common source of authority in maritime personal injury cases, refuses to take an official position on the question whether a prior settlement acts as a bar to contribution. Rather, the Restatement offers three alternative resolutions: (1) allowing any non-settling tortfeasor that has suffered an adverse judgment in which it paid more than its equitable share of the plaintiff's claim to maintain an action for contribution against a settling tortfeasor; (2) reducing the damages awarded the plaintiff by the amount of the settlement and imposing a bar on contribution against the settling tortfeasor; and (3) reducing the claim of the plaintiff by a pro rata share of the settling tortfeasor's liability for the damages. Restatement (Second) of Torts § 886A, comment m (1975). The second of these approaches entirely prohibits an action for contribution against a settling tortfeasor; the third approach eliminates any reason to sue a settling tortfeasor for contribution. Miller v. Christopher, 887 F.2d 902, 905 (9th Cir.1989).
 
 
 27
 The position of the Fifth Circuit concerning the effect of one tortfeasor's settlement on the contribution rights of other tortfeasors is uncertain. In Leger v. Drilling Well Control, 592 F.2d 1246 (5th Cir.1979), this Court appeared to adopt the third Restatement approach. The Court reasoned that a judgment awarded to a claimant must be reduced by a dollar amount that represents the proportion of negligence, if any, attributable to settling parties. Id. at 1249. Recently, however, this Court has criticized, if not abandoned, the Leger formulation. In Hernandez v. M/V RAJAAN, 841 F.2d 582 (5th Cir.), cert. denied, 488 U.S. 981, 109 S.Ct. 530, 102 L.Ed.2d 562 (1988), the Court concluded that a judgment awarded to a claimant is reduced not by the dollar amount that represents the pro rata share of the settling parties' negligence, but rather by the amount that the claimant received in settlement. Id. at 591.[14] This conclusion is akin to the Restatement's second recommended resolution of the contribution rights of a non-settling tortfeasor.
 
 
 28
 We need not resolve the tension between Leger and Hernandez.[15] It is sufficient for us to note that BOS has no right to contribution against ZAGOC under either rule. Both Leger and Hernandez require that the district court reduce the amount of damages that the jury awards to the plaintiff. If a liable defendant, like BOS in the instant case, complains that the amount of damages it owes the plaintiff is excessive, it must pursue its complaint against the plaintiff and not the settling defendants. BOS did not do so. It instead entered into a post-trial settlement with plaintiff Hardy and pursued its complaint in a contribution action against ZAGOC.
 
 
 29
 This Court cannot endorse the procedure that BOS followed. A rule that a liable defendant could enter into a post-trial settlement with the plaintiff and then initiate an action for contribution against the defendants that settled with the plaintiff before trial would, among other things, shatter the traditional finality of settlements. The departure of a plaintiff through settlement would no longer mark the end of a lawsuit. With motions for equalization of damages thinly disguised as actions for contribution, defendants that have suffered an adverse judgment could continue to harass defendants that settled with the plaintiff prior to trial. The dockets of the federal courts, already bloated, would swell further. We must avoid this danger and conclude that BOS's post-trial settlement with Hardy constitutes a waiver of its right of contribution.
 
 III. CONCLUSION
 
 30
 This Court cannot discern that BOS has a right either to indemnity or contribution from ZAGOC. The same result ensues under Texas or general maritime law. BOS has no right to indemnity because it did not expressly contract for this protection and the available theories of common law or tort indemnity are inapplicable. BOS has no right to contribution because it waived its right to a reduction in damages when it entered into a post-judgment settlement with the plaintiff. The judgment of the district court is affirmed.
 
 
 31
 AFFIRMED.
 
 
 32
 JOHN R. BROWN, Circuit Judge, concurring.
 
 
 33
 I concur in the scholarly opinion of Judge Johnson, but I have these observations to emphasize certain things.
 
 
 34
 First, Zaire Gulf has not sought indemnity/contribution[1] from BOS, so that question is not strictly presented to us. The opinion does not jeopardize any such rights by Zaire Gulf. Contrary to some suggestions on oral argument, the fact that Zaire Gulf settled with Hardy would not forbid Zaire Gulf from seeking indemnity/contribution from BOS.
 
 
 35
 From the viewpoint of maritime law, this is important since in the run-of-the-mill cases, especially in admiralty, a party exposed to serious liabilities will often wish to settle with the claimant with reservation or expectancy of the right to claim indemnity/contribution from non-settling parties. Any contrary rule would discourage settlements or interfere with exploration of settlement possibilities. The shoe might be on the other foot when a non-settling party seeks indemnity/contribution against a settlor. See Restatement (Second) of Torts and the Court's Opinion at p. 836.
 
 
 36
 Second, and more important, the court suggests, in n. 15, that the court en banc should perhaps resolve the conflict between Leger[2] and Hernandez.[3] I would urge that it is imperative that the court en banc consider and determine this problem. To the cases listed in n. 15, must now be added Constructores Tecnicos, S. de R.L. v. Sea-Land Serv., Inc., 945 F.2d 841 (5th Cir.1991). This opinion, as does Leger, shows, as a matter of simple arithmetic, that use of the Leger formula may, and often does, award more than 100% of the damages sustained by the plaintiff-victim of the tort. Such a result is forbidden by Hernandez, and by Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). Those on the firing line--not only district judges, but counsel trying to work out acceptable settlements--need to know which rule will apply. This is so since the net result in terms of dollars may be considerable to the parties. We cannot have it both ways.
 
 
 
 [1]
 The posture of the parties in the instant action--defendant versus defendant--is certainly more common in admiralty cases than in other categories of complaints. See Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1209 (5th Cir.1986) ("in the complicated offshore drilling environment with its intricate divisions of responsibility and countless contractors and subcontractors, a simple slip-and-fall can turn into a multiparty morass of contribution cross-claims, third- and fourth-party defendants, reciprocal indemnity agreements, and the ever-popular warranties of workmanlike performance.")
 
 
 [2]
 Early in the history of this action, Hardy joined Bouygues Offshore U.S.A., Inc., as a defendant. Bouygues Offshore U.S.A., Inc., is apparently a subsidiary of Bouygues Offshore S.A. It is unclear whether the American subsidiary had any active involvement in the execution or performance of the service contract with Zaire Gulf Oil Company
 
 
 [3]
 A "well jacket" is a three legged raised platform that provides workers easier access to the well valve assembly
 
 
 [4]
 Hardy also named as defendants several Gulf entities related to ZAGOC--including Gulf Oil Corporation, Gulf Oil Exploration & Production Company and Cabinda Gulf Oil Company--and his employer, On and Offshore. Later in the proceedings, Hardy voluntarily dismissed Cabinda Gulf Oil Company and On and Offshore
 
 
 [5]
 BOS's original crossclaim specifically requested indemnity, and not contribution, from ZAGOC. BOS contends that the district court granted BOS permission to expand the crossclaim to encompass contribution. The record does not clearly indicate that the district court actually granted this permission. The result that this Court reaches, however, does not change even if we treat BOS's crossclaim for indemnity as a concurrent claim for contribution. Accordingly, this opinion addresses both indemnity and contribution principles
 
 
 [6]
 The district court did not rule on the merits of ZAGOC's cross-claim against BOS. We nonetheless conclude that the judgment of the district court is final. Accordingly, this Court may exercise its appellate jurisdiction. Because ZAGOC's cross-claim was expressed in the alternative and the contingency which would have triggered consideration of the cross-claim did not occur--a finding that ZAGOC was liable to Hardy--the district court had no reason to rule on ZAGOC's cross-claim. In determining whether it should exercise appellate jurisdiction, this Court gives the term "final" a practical, rather than technical, construction. If, as here, the district court has effectively disposed of all of the claims before it, judicial efficiency permits this Court to proceed with its examination of the merits. See Jetco Electronic Ind., Inc. v. Gardiner, 473 F.2d 1228 (5th Cir.1973)
 
 
 [7]
 The body of law that governs a claim for indemnity or contribution usually is the same body of law that establishes the indemnitee's primary liability to the plaintiff. Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa, 761 F.2d 229, 235 (5th Cir.1985) (citing White v. Johns-Manville Corp., 662 F.2d 243, 247 (4th Cir.1981)) (emphasis added). In the instant case, maritime law established plaintiff Hardy's cause of action against BOS and, under the general rule, should govern BOS's claim for indemnity or contribution from ZAGOC. This Court has determined, however, that if the parties have included an enforceable choice of law clause in their contract, the law that the parties have chosen will govern the claim for contribution or indemnity. Stoot v. Fluor Drilling Services, Inc., 851 F.2d 1514, 1517 (5th Cir.1988). ZAGOC and BOS included an apparent designation of Texas law in their service contract, but it is unclear whether the choice of law clause in this contract is enforceable: it does not clearly state that Texas law governs the parties' indemnity and contribution rights
 We need not resolve this choice of law quandary. We express no opinion whether Texas law or general maritime law governs the resolution of this case because we conclude that BOS has no right to indemnity or contribution under either body of law.
 
 
 [8]
 We recognize that the Texas legislature has limited the enforceability of indemnity provisions in certain mineral agreements. See Tex.Civ.Prac. & Rem.Code §§ 127.001-.008 (Vernon 1986). This statutory limitation, however, affects only a small category of indemnity agreements. See Transworld Drilling Co. v. Levingston Shipbuilding Co., 693 S.W.2d 19 (Tex.App.--Beaumont 1985, no writ) (discussing the types of indemnity contracts that fall within the coverage of the anti-indemnity statute). It is not applicable here
 
 
 [9]
 The Texas comparative liability statute defines "settling person" as "a person who at the time of submission has paid or promised to pay money or anything of monetary value to a claimant at any time in consideration of potential liability ... with respect to the personal injury, property damage, death, or other harm for which recovery of damages is sought." Tex.Civ.Prac. & Rem.Code Ann. § 33.011(5) (Vernon Supp.1989)
 
 
 [10]
 Before it calculates the reduction for prior settlements, the trial court ordinarily must reduce the amount of damages "by a percentage equal to the claimant's percentage of responsibility." Tex.Civ.Prac. & Rem.Code Ann. § 33.012(a). In the instant case, however, the jury determined that the claimant Hardy was not responsible, even in part, for his injuries. The district court therefore need not have adjusted the amount of damages to reflect the claimant's percentage of responsibility
 
 
 [11]
 Section 33.012(b) provides as follows:
 (b) If the claimant has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a credit equal to one of the following, as elected in accordance with Section 33.014:
 (1) the sum or the dollar amounts of all settlements; or
 (2) a dollar amount equal to the sum of the following percentages of damages found by the trier of fact:
 (A) 5 percent of those damages up to $200,000;
 (B) 10 percent of those damages from $200,000 to $400,000;
 (C) 15 percent of those damages from $400,001 to $500,000; and
 (D) 20 percent of those damages greater than $500,000.
 
 
 [12]
 Commentators have more or less assumed that Marathon Pipe Line indemnity is available only to tortfeasors who are liable under a theory of constructive liability or imputed fault. See, e.g., Yeates, Dye & Garcia, Contribution and Indemnity in Maritime Litigation, 30 S.Tex.L.Rev. 215, 241 (1989)
 
 
 [13]
 Prior to Reliable Transfer, this Court held that a tortfeasor whose negligence was "passive" could pursue an indemnity action against a tortfeasor whose negligence was "active." See, e.g., Cotten v. Two "R" Drilling Co., 508 F.2d 669, 671 (5th Cir.1975); Kelloch v. S & H Subwater Salvage, Inc., 473 F.2d 767, 769 (5th Cir.1973). A passive tortfeasor was a party whose negligence, if any, was minor; e.g., the tortfeasor failed to discover or to remedy a dangerous condition. Wedlock v. Gulf Miss. Marine Corp., 554 F.2d 240, 243 (5th Cir.1977). The Court abandoned the active/passive distinction in Loose v. Offshore Navigation, Inc., 670 F.2d 493 (5th Cir.1982). "[T]he concepts of active and passive negligence have no place in a liability system that considers the facts of each case and assesses and apportions damages among joint tortfeasors according to the degree of responsibility of each party." Id. at 502. A conclusion that BOS could pursue an indemnity action against ZAGOC as a "non-negligent tortfeasor" would resurrect this antiquated active/passive negligence distinction
 
 
 [14]
 The Court in Hernandez found persuasive the reasoning of the Eleventh Circuit in Self v. Great Lakes Dredge & Dry Dock Co., 832 F.2d 1540 (11th Cir.1987), cert. denied, 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988). In Self, the Eleventh Circuit concluded that a plaintiff in a maritime suit is entitled to receive a full damage award less any amount that the plaintiff received in a settlement with third-party defendants. Id. at 1548. The court, rejecting the Fifth Circuit approach in Leger, commented that the Leger rule was inconsistent with an intervening United States Supreme Court opinion that "reaffirmed the right of a plaintiff to recover from any single tortfeasor the full compensation for damages incurred." Id. at 1546 (citing Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979))
 
 
 [15]
 Recent cases illustrate the apparent tension between Leger and Hernandez in the Fifth Circuit. In Teal v. Eagle Fleet, Inc., 933 F.2d 341 (5th Cir.1991), this Court suggested that the formulation in Leger was the proper standard. Id. at 346. On the other hand, in Rollins v. Cenac Towing Co., 938 F.2d 599 (5th Cir.1991), this Court, without citation to Leger, relied upon the Hernandez formulation in reaching its decision. Id. at 600. The Court in Myers v. Griffin-Alexander Drilling Co., 910 F.2d 1252 (5th Cir.1990), also relied upon the Hernandez formulation. Id. at 1256
 The conflict between Leger and Hernandez has prompted criticism. See Schill, Recent Developments Regarding Maritime Contribution and Indemnity, 51 La.L.Rev. 975, 988-89 (1991) (suggesting that the Fifth Circuit should resolve the conflict in an en banc review).
 
 
 [1]
 I use this term loosely; not to suggest that such remedies are substantively available, but merely as description if, substantively, either one or both is available
 
 
 [2]
 Leger v. Drilling Well Control, Inc., 592 F.2d 1246 (5th Cir.1979)
 
 
 [3]
 Hernandez v. M/V RAJAAN, 841 F.2d 582 (5th Cir.), cert. denied, 488 U.S. 981, 109 S.Ct. 530, 102 L.Ed.2d 562 (1988)