United States Court of Appeals,

Fifth Circuit.

Nos. 89-2237, 92-2915.

Summary Calendars.

ROCKWELL INTERNATIONAL CORP., Plaintiff-Appellant, Cross-Appellee,

v.

M/V INCOTRANS SPIRIT, her Engines, Tackle, Apparel, etc., et al., Defendants-Appellees, Cross-Appellants.

ROCKWELL INTERNATIONAL CORP., Plaintiff-Appellant,

v.

M/V INCOTRANS SPIRIT, etc., et al., Defendants.

PORT OF HOUSTON AUTHORITY, Defendant-Third Party Defendant-Appellee,

v.

INTERCONTINENTAL TRANSPORT (ICT) B.V. and Incotrans Gulf Europe Service, etc., Defendants-Cross Plaintiffs, Cross Defendants-Third Party Plaintiffs-Appellees, Appellants-Cross Appellees,

v.

FAIRWAY STEVEDORES, INC., Defendant-Cross Defendant, Cross Plaintiff-Appellee, Cross Appellant.

Aug. 23, 1993.

Appeals from the United States District Court for the Southern District of Texas.

Appeals from the United States District Court for the Southern District of Texas.

Before HIGGINBOTHAM, SMITH, and DeMOSS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

For some maritime cargo, the perils of the shoreward leg of its journey rival those of the sea. When a large printing press was discharged at the Port of Houston, its land transport capsized. Then the cargo was pushed aside to clear the wharf, with more damage. The cargo's shipper, Rockwell International, sued the carrier, stevedore, and port authority to recover the cost of repairing its press.

Rockwell contracted for the transport of a large printing press transported from Germany to

Texas. Its components were packed into forty-five crates for the voyage from Bremerhaven to Houston aboard the container ship M/V Incotrans Spirit. Intercontinental Transport (ICT) B.V. owns and Incotrans Gulf Europe Service operates the Incotrans Spirit.

In February 1989, the district court granted Fairway and Incotrans' motions for partial summary judgment, limiting their liability to $500 per package pursuant to the Carriage of Goods by Sea Act, 46 U.S.C.App. § 1304(5). *See Rockwell Int'l Corp. v. M/V Incotrans Spirit,* 707 F.Supp. 272 (S.D.Tex.1989).[1] The district court later held that the Port Authority's liability was limited to $100,000 under the Texas Tort Claims Act. A bench trial was held in September 1992. The district court found that Fairway failed to perform its stevedore services in a workmanlike manner by failing to follow Incotrans' instructions and failing to discharge all three crates by the break bulk method. The court found that the damage was caused 50% by Fairway's conduct and 50% by the Port Authority's conduct. It concluded that Incotrans engaged in no act or omission that caused damage to the cargo. We affirm.

I

Incotrans issued a clean bill of lading for pier to pier shipment with a Himalaya clause extending its defenses and protections to the carrier's agents and contractors. It was silent regarding the means of loading or unloading the cargo. Rockwell did not declare the value of the cargo on the bill of lading.

This case concerns damage to two of three Rockwell crates loaded upon a flatrack container in Bremerhaven. A flatrack is a rectangular bed with headboards at each end but no walls along its length. Two of the crates weighed over 18,000 kilograms and were placed at either end of the flatrack. The third crate weighed 1810 kilograms and was placed in the middle of the flatrack.

Incotrans prepared written discharge instructions for this flatrack and sent those instructions to its agent in Houston. The instructions noted the flatrack's weight and directed that one of the heavier crates be removed separate from the flatrack by the break bulk discharge method. Incotrans'

---

[1] This ruling led to appeal No. 89-2237. Following our decision in another case, *Bucher-Guyer AG v. M/V Incotrans Spirit,* 868 F.2d 734 (5th Cir.1989), disallowing the interlocutory appeal of such COGSA rulings, No. 89-2237 was stayed pending the final judgment of the district court.

stowage planner faxed these instructions to Fairway Stevedores and discussed them with a Fairway superintendent.

When M/V Incotrans Spirit arrived in Houston, Fairway discharged its cargo. The flatrack was unloaded late in the afternoon of Saturday, June 21, 1986. When discharging the flatrack, Fairway did not follow the Incotrans' instruction to remove one of the heavier crates from it. The stevedores removed only the center, lightest crate from the flatrack. Witnesses testified that following Incotrans' instructions precisely would have unbalanced the flatrack from end to end. So unbalanced, it would be difficult to lift by crane and might damage the ship or cargo. Fairway removed the flatrack still bearing both of the heavier crates.

When the flatrack was placed upon a chassis on the wharf and released from the crane, the chassis, flatrack, and both crates fell over. This fall damaged components in the crates.

Fairway and Incotrans left the crates where they fell, intending to move them with additional equipment on Monday, June 23. Before then, however, the Port of Houston Authority decided to clear the wharf. Monday morning, the Port Authority used forklifts to push and drag the capsized crates fifty feet. Forklift blades punctured the walls of the crates. The result of all this was a repair bill of $994,995.

## II

COGSA provides that carriers' liability for damaged goods shall not exceed $500 per package, unless the shipper declares the value of the goods and it is inserted in the bill of lading." 46 U.S.C. § 1304(5).[2] Rockwell seeks to avoid this limitation by asserting that Fairway and Incotrans' conduct constituted a deviation from the terms of the bill of lading. *See Spartus Corp. v. S/S Yafo,* 590 F.2d 1310 (5th Cir.1979) (holding that deviation renders § 1304(5) inapplicable). The district court rejected this argument in its published ruling on motions for summary judgment. *M/V Incotrans Spirit, supra.* After the 1992 trial, the district court once again concluded that no act or omission of Incotrans or Fairway constituted a deviation that would abrogate the statutory limitation.

---

[2]The bill of lading's Himalaya clause extended COGSA's limitation protection to Fairway. *See Brown & Root, Inc. v. M/V Peisander,* 648 F.2d 415, 423 (5th Cir.1981) (upholding Himalaya clause to extend COGSA limitation to stevedore).

We affirm this ruling for essentially the reasons stated by the district court. Rockwell's attempt to recast negligence as a willful breach of implied contractual terms is to no avail. Incotrans, not Rockwell, gave the instructions Fairway failed to follow. The bill of lading is silent regarding the means of loading or unloading the cargo. Nothing suggest s that Rockwell contemplated any particular means of discharge.

The pier-to-pier term of the bill of lading does not change the result. It extended the time during which the carrier and its stevedore agents were responsible for the cargo's safety, to the time that the cargo is delivered to the consignee or overland shipper. *See B. Elliott (Canada) Ltd. v. John T. Clark & Son,* 704 F.2d 1305, 1307 (4th Cir.1983). Without this provision, their responsibility would end upon the cargo's discharge from the ship. *See* 46 U.S.C.App. § 1301(e). We agree that this provision gave Incotrans the authority to place the cargo in containers and load it upon the ship and to direct its discharge. We are not persuaded, however, that this provision operates to incorporate the carrier's discharge instructions to its stevedore agent as part of the bill of lading. Nor does the expansion of time alter the applicable standard of care.

Marine insurance policies have changed with the development of the doctrine of deviation. Held covered clauses now protect shippers under most circumstances. At the same time, Congress has protected carriers under COGSA. The notion of non-geographic deviation may be "of doubtful justice under modern conditions, of questionable status under Cogsa [sic], and of highly penal effect." Grant Gilmore and Charles L. Black, Jr., *The Law of Admiralty* § 3-42, at 183 (2d ed. 1975); *see also B.M.A. Industries, Ltd. v. Nigerian Star Line, Ltd.,* 786 F.2d 90, 92 (2d Cir.1986) (quoting Gilmore & Black and refusing to expand doctrine). We decline to expand the doctrine to cover the facts presented here.

III

Incotrans seeks indemnity of its costs of defense from Fairway and the Port Authority. The district court denied their recovery, but found that Incotrans' attorney's fees and expenses in defending against Rockwell claims, including this appeal, would total $38,000.

Incotrans points to the district court's holdings that Fairway breached its stevedore's warranty

of workmanlike performance and that Incotrans lacked fault. The carrier argues that it is therefore entitled to indemnity by Fairway and the tortfeasor Port Authority for its defense costs pursuant to *Ryan Stevedoring Co. v. Pan Atlantic S.S. Co.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

This argument cannot escape *Bosnor, S.A. de C.V. v. Tug L.A. Barrios,* 796 F.2d 776 (5th Cir.1986). In *Bosnor,* the stevedore improperly loaded steel pipe aboard a barge. En route to Mexico with a time chartered tug, stanchions added by the stevedore to the barge broke and cargo went overboard. The trial court assessed fault to the stevedore, the crew of the tug, and the tug *in rem.* No fault was attributed to the owner of the barge or the freight forwarder, to whom the trial court awarded attorney's fees under *Ryan. Id.* 796 F.2d at 779-80. We reversed this award, rejecting the application of *Ryan* indemnification in favor of comparative fault principles. *Id.* 796 F.2d at 784-86.

As in *Bosnor,* the vessel owner in this case is without fault for the cargo casualty. Unable to distinguish *Bosnor* on its facts, Incotrans asks this court to reconsider that decision. It suggests that this court has improperly narrowed—if not eliminated—the stevedore's implied warranty of workmanlike performance without congressional or Supreme Court direction. Aside from being bound by our prior decision, we find no merit in this argument. The Supreme Court introduced comparative fault to the maritime field in *United States v. Reliable Transfer Co.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975); *see also Hardy v. Gulf Oil Corp.,* 949 F.2d 826, 833 (5th Cir.1992). Although *Reliable Transfer* was a collision case, as Incotrans emphasizes, we have read it to displace "a plethora of tort indemnity theories" except " "where proportionate degrees of fault cannot be measured and determined on a rational basis.' " *Hardy,* 949 F.2d at 833 (quoting *Reliable Transfer,* 421 U.S. at 405, 95 S.Ct. at 1713). We recognize that *Ryan* indemnification continues to exist, but are reluctant to expand it beyond the personal injury/seaworthiness context from which it arose. *Id.* 949 F.2d at 834.

Under *Bosnor,* although innocent of fault, Incotrans cannot recover indemnification of its defense costs from Fairway or the Port Authority. Finding the *Ryan* doctrine inapplicable, we need not address whether the Port Authority falls within its ambit.

IV

Finally, Fairway contends that the district court clearly erred in finding that no fault of Incotrans contributed to the damage. The district court attributed 507 of the damage to Fairway's fault and the remainder to the Port Authority. Fairway maintains that Incotrans' faulty discharge instructions caused the initial accident.

The district court's finding shall be not disturbed unless "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). If the district court's findings are plausible, we may not reverse even if we would have weighed the evidence differently. *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Noting that most of the testimony occurred by deposition, Fairway asserts that the clearly erroneous standard should be relaxed, citing *Connally v. Transcon Lines,* 583 F.2d 199, 202 (5th Cir.1978) (stating that standard "is somewhat modified where there is little or no "live' testimony"). *Connally* goes on, however, to state that "if the conclusions of the trial judge may reasonably be inferred from the record, such conclusions will not be disturbed on appeal." *Id.*

The district court found fault in Fairway's failure to follow Incotrans' instructions and failure to discharge the cargo in a break bulk manner. Fairway argues that Incotrans contributed to the overturning of the chassis and flatrack by failing to give proper instructions and misloading the flatrack. Witnesses testified that following Incotrans' instructions to remove one heavier crate would have threatened the ship and cargo by creating an end-to-end imbalance. Fairway also points to testimony that Incotrans' loading caused the flatrack to be imbalanced from side-to-side and to have too high a center of gravity.

Incotrans replies by noting that its instructions were not followed—thus any flaws in them did not contribute to the accident. Fairway disregarded those instructions and chose the method that caused the accident by, inter alia, exceeding the weight capacity of the chassis it employed. There was testimony that the safest discharge method would have been to discharge all three crates by break bulk method. Fairway did not do so and the district court specifically found fault in this failure.

Moreover, Incotrans points to the testimony of port captain Karl Platinga, repeating the opinion he expressed by letter to Incotrans that "Fairway Stevedores is fully responsible for the initial damage caused by tipping over the chassis, flatrack and cargo."

Fairway has not demonstrated clear error in the fact findings.

AFFIRMED.