**James L. HARRISON and David Houston d/b/a Clear Lake Rescue, Plaintiffs/Counter–Defendants,**

v.

**S/V WANDERER, In Rem; and Jesse Duncan and Captron Entertainment, Inc., In Personam, Defendants/Counter–Plaintiffs.**

No. Civ.A. H–97–1732.

United States District Court,
S.D. Texas,
Houston Division.

April 3, 1998.

---

James T. Brown, Legge Farrow Kimmitt and McGrath, Houston, TX, for Clear Lake Rescue Inc.

Charles F. Herd, Jr., Rice Fowler, Houston, TX, for Jesse Duncan, Captron Entertainment, Inc.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

Plaintiffs James L. Harrison and David Houston d/b/a Clear Lake Rescue ("CLR") filed this admiralty action to recover for services rendered to the S/V Wanderer (the "Vessel") when it became grounded on a reef in Galveston Bay. The case is now before the Court on CLR's Motion for Summary Judgment on the Counterclaim filed by Jesse Duncan ("Duncan") and Captron Entertainment, Inc. ("Captron") [Doc. # 25] ("Motion").

CLR argues that Duncan signed a valid release of all claims against CLR, and that the release equally binds Captron. Duncan and Captron argue that the release is not sufficiently clear and conspicuous, that it is void pursuant to *Bisso v. Inland Waterways Corp.*, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955), and that it was obtained under duress. Captron argues that Duncan signed the release only in his individual capacity and, as a result, the release is not binding as to Captron's claims against CLR. The Court, having considered the pleadings and the applicable case law, concludes that the material facts are undisputed and that CLR is entitled to summary judgment on the Counterclaim.

### I. FACTUAL AND PROCEDURAL BACKGROUND

***Background Facts.***—On the evening of March 28, 1997, the Vessel became grounded on the Red Fish Reef in Galveston Bay. At the time of the grounding, Captron was owner and Duncan was captain of the Vessel. Additionally, Duncan was President, chief executive, director, and authorized representative of Captron.

Duncan attempted to employ Sackett Rescue to pull the Vessel off the grounded position, but Sackett responded that it did not have a proper towboat available. Sackett suggested that Duncan contact CLR. That same night, CLR attempted unsuccessfully to remove the Vessel from the reef. CLR offered to take any passengers back to shore, but none accepted CLR's offer.

The next morning, Duncan telephoned CLR to determine when CLR would return to remove the Vessel from its grounded position. CLR returned to the Vessel and presented Duncan with a salvage contract form, a release of liability, and an invoice form. Duncan read the documents and initially refused to sign them. CLR's representative advised Duncan that CLR would not begin work unless the documents were signed. Duncan signed the documents, including the release, and CLR began attempts to pull the Vessel off ground.

***The Release.***—The Release is isolated on a single sheet of paper and contains only two sentences. It reads, in its entirety, "I hereby release [CLR] of any and all liabilities resulting from rescue work and or towing of my Vessel. This includes but is not limited to damages to my Vessel, Piers, Wharfs, other Vessels, Myself and Passengers aboard my vessel."

***Complaint and Counterclaim.***—CLR filed suit against the Vessel *in rem* and against Duncan and Captron *in personam* for the services provided to the Vessel in Galveston Bay. CLR alleged a contract claim and, alternatively, a pure salvage claim.

Duncan and Captron filed a Counterclaim asserting several tort claims for damages to

the Vessel allegedly caused by CLR's conduct during its attempts to remove the Vessel from its grounded position. CLR has raised the release as a defense to the Counterclaim.

## II. SUMMARY JUDGMENT STANDARD

The United States Supreme Court has held that a motion for summary judgment is properly granted unless there is evidence "on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56 is an integral part of the Federal Rules of Civil Procedure, recognizing a party's right to demonstrate that certain claims have no legal or factual basis and to have those unsupported claims disposed of prior to trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the movant shows that there are no genuine issues of material fact, the burden is on the nonmovant to demonstrate with "significant probative evidence" that there is an issue of material fact warranting a trial. *Texas Manufactured Housing Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997). The nonmovant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Douglass v. United Services Automobile Ass'n*, 65 F.3d 452, 459 (5th Cir.1995), *revised on other grounds*, 79 F.3d 1415 (5th Cir.1996) (*en banc*); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*).

## III. LEGAL ANALYSIS

### A. Validity of the Release

■ *Clarity Requirement.*—CLR in its Motion argued that the validity of the release was governed by the express negligence doctrine adopted by the Texas Supreme Court in *Ethyl Corp. v. Daniel Construction Co.*, 725 S.W.2d 705, 708 (Tex.1987). Duncan and Captron agreed that the *Ethyl* standard applied. In its reply, however, CLR argued that the validity of a release provision contained in a maritime contract is determined in accordance with maritime law. *See Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 317 (5th Cir.1990). The Court agrees that Maritime law governs this issue. As a general rule, the "body of law that governs a claim for indemnity or contribution usually is the same body of law that establishes the indemnitee's primary liability to the plaintiff." *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 830 n. 7 (5th Cir.1992).[1]

■ General principles for interpreting releases and indemnity clauses under Maritime law provide that indemnification for or release of one's own negligence must be clearly and unequivocally expressed. *Seal Offshore, Inc. v. American Standard, Inc.*, 736 F.2d 1078, 1081 (5th Cir.1984), *citing United States v. Seckinger*, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970). A release in a maritime contract will not be effective unless its terms are expressed unequivocally. *Hardy*, 949 F.2d at 834.

■ The release in this case is conspicuous by its segregation from all other provisions of the contract. The language in the release also is clear and unequivocal, providing that CLR is released from "all liabilities resulting from rescue work and or towing of [the] Vessel." Duncan testified that he read the release and understood its terms. Deposition of Jesse Duncan "Duncan Depo." (Exh. A to Motion), at 204. Specifically, when asked if there were "terms or statements in [the release] that [he didn't] understand what they mean," Duncan responded "No." *Id.* Although Duncan now maintains that he did not want to release CLR from liability in any

---

1. In *Hardy*, a choice of law issue arose because the contract provided that Texas law would apply. *Hardy*, 949 F.2d at 826 n. 7. In this case, however, the contract is consistent with the general rule, providing in paragraph 7 that the services performed are governed by the "Admiralty and Maritime Jurisdiction of the Federal Courts...."

respect, the conspicuousness of the release and the clear and unequivocal language of the document establish that Duncan signed a release that he understood was intended to operate as a full release of all claims including those asserted in the Counterclaim. The release satisfies the maritime standard for a valid release.[2]

■ **Bisso Doctrine.**—Duncan and Captron argue that the contract was one for towage, and exculpatory clauses in towage contracts are void as a matter of public policy under *Bisso v. Inland Waterways Corp.*, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955). In *The Kennebec*, 231 F. 423 (5th Cir.1916), the Fifth Circuit clearly described the difference between salvage and towage:

[a] salvage service is a service voluntarily rendered to a vessel needing assistance, and is designed to relieve her from some distress or danger either present or to be reasonably apprehended. A towage service is one which is rendered for the mere purpose of expediting her voyage, without reference to any circumstances of danger.

*Id.* at 425. To constitute a salvage service, "[i]t is not necessary that there be danger immediately impending, but if the vessel is stranded so that it is subject to the potential danger of damage or destruction she may well be a subject of salvage services." *Fort Myers Shell & Dredging Co. v. Barge NBC 512*, 404 F.2d 137, 139 (5th Cir.1968). The undisputed facts establish that, under long-standing Fifth Circuit authority, the service provided by CLR was salvage and not towage.

The unambiguous language of the documents together with the undisputed evidence also establish that the contract was not one for towage. The contract is entitled "Standard Form Yacht Salvage Contract" and provides that CLR agrees "to salvage the vessel" under the terms of the agreement. CLR's invoice provides that the service provided and the basis for the. charges is "salvage." The release covers "all liabilities resulting from rescue work and or towing . . . ."

■ It further is undisputed that the Vessel was grounded and needed assistance to get off the reef. Duncan testified in his deposition that the Vessel was grounded on a bed of oyster shells which were "not good for the bottom paint" and could damage the Vessel. Duncan Depo., at 145. Duncan also testified that he reported to the Coast Guard that the service provided by CLR was salvage. *Id.* at 163. This is confirmed by the Coast Guard log, attached as Exhibit F to CLR's Reply [Doc. #30]. Additionally, "a contract for a service known by both parties to be of a kind which the law denominates a salvage service is not vitiated by the fact that the party procuring the rendition of it stated to the other party that it was a towage service." *Kennebec*, 231 F. at 425–26.

The documents and the undisputed evidence establish that the service provided by CLR was intended to remove the Vessel from its grounded position, not simply to expedite the Vessel's voyage. The service, therefore, was one of salvage and not of towage.

■ **Duress Affirmative Defense.**—Duncan and Captron allege that the release is unenforceable because it was obtained by duress, specifically by the CLR representative's statement that work would not commence unless the contract, including the release, was executed. The Court concludes that Duncan and Captron have failed to raise a genuine issue of material fact regarding their duress defense.

■ Maritime contracts may be avoided where they are the result of duress. *See Magnolia Petroleum Co. v. National Oil Transport Co.*, 286 F. 40, 42 (5th Cir.1923). In that case, the vessel was in a "helpless condition" and was not equipped with a radio or a telephone. The Supreme Court has rejected a duress defense to a maritime contract where the vessel, though "hardly without serious danger," was not in immediate danger, and the Master had the ability to consult with the vessel owner prior to entering into the agreement. *THE ELFRIDA*,

---

**2.** The result might well be different under the stricter *Ethyl* standard, which effectively requires explicit reference to claims for ones own negligence in the release before the release will be held binding.

172 U.S. 186, 203, 19 S.Ct. 146, 43 L.Ed. 413 (1898).

In this case, it is undisputed that the Vessel, though grounded, was not in immediate danger. Duncan Depo., at 212. It had been resting on the reef for many hours without incident. It is also undisputed that Duncan had access to a functioning telephone and radio. *Id.* at 147–48. Duncan had the ability to contact the United States Coast Guard. *Id.* at 146. There is no evidence that Duncan was unable to contact the Vessel owner (Captron) to discuss the situation prior to signing the release. It is also undisputed that Duncan knew of at least one other salvage operator in the area, Sackett, and Duncan failed to recontact that company the second day the vessel was grounded until after he signed CLR's documents. *Id.* at 166.

Duncan and Captron rely on evidence that CLR would not begin work on March 29, 1997, unless Duncan signed the contract and the release, and that Duncan did not know of anyone to call other than CLR, Sackett, and the Coast Guard. Finally, Duncan and Captron have submitted no legal authority for their argument that CLR had any obligation to advise a potential client of all area competitors before entering into a contract for services. The evidence relied upon by Duncan and Captron therefore fails to raise a genuine issue of material fact regarding duress.

***Conclusion as to Effectiveness of Release.***—The release in this case is conspicuous and clearly and unequivocally releases the claims asserted in the Counterclaim. Duncan and Captron have failed to present sufficient evidence to support their duress defense. As a result, the release is valid and operates to release all claims raised by Duncan and Captron in their Counterclaim.

## B. *Applicability of Ruling to Captron*

■ Captron argues that, even should the Court conclude as it has that the release is valid and binding, it should not be binding on Captron because it was signed by Duncan only in his individual capacity. Captron relies on Duncan's statement in his affidavit, attached as Exhibit A to its Response to the Motion [Doc. # 29], that he "did not sign the documents on behalf of Captron, rather in [his] own individual capacity, because [he] was the charterer of the Sailboat." Duncan Aff., at 3.

■ Initially, it is undisputed that Captron was the owner of the Vessel. Duncan was the President, chief executive, and a director of Captron. Duncan Depo., at 24. Moreover, he was Captron's representative on the Vessel, even when the Vessel was under charter.[3] *Id.* at 279–80. It is also undisputed that Duncan was the captain of the Vessel at all times in question. *Id.* at 144. As a matter of law, the "master" of a vessel has the authority to bind its owners by acts performed within the scope of the master's normal duties and responsibilities. *Jackson Marine Corp. v. Blue Fox,* 845 F.2d 1307, 1309–10 (5th Cir.1988).

■ Additionally, Duncan's affidavit is inconsistent with his prior sworn deposition testimony. Although Duncan states in his affidavit that he had chartered the Vessel and was acting only in his individual capacity, he testified in his deposition that, only hours after signing the CLR documents, he acted for Captron to hire Sackett Rescue. Duncan Depo., at 215. A non-movant cannot defeat a motion for summary judgment by submitting affidavits which are in conflict with prior sworn deposition testimony. *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 495 (5th Cir.1996).

Duncan, acting as master of the Vessel and as Captron's representative on the Vessel, had the capacity to bind Captron when he executed the contract and release. Captron has failed to present evidence which is sufficient to raise a genuine issue of material fact regarding its argument that Duncan was acting only in his individual capacity and not as a representative of Captron. Captron, as

---

**3.** Duncan's testimony was as follows:

Q. And on those occasions when the charterer, the customers who wanted to use the boat, when they wanted to be the master, steer, adjust the sails, do whatever, would you still normally want to be available as the owner aboard—the owner's representative abroad?

A. Yes.

Duncan Depo., at 279–80.

principal, therefore is bound by its agent Duncan's actions.

## IV. CONCLUSION

The claims asserted in the Counterclaim are barred by the release, which is valid and binding on both Duncan and Captron. Accordingly, it is hereby

**ORDERED** that CLR's Motion for Summary Judgment on the Counterclaim [Doc. # 25] is **GRANTED.**