**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 98-31161
Summary Calendar

EGOROV, PUCHINSKY, AFANASIEV, & JURING; KAVANAGH & RENDEIRO,

Plaintiffs-Appellants,

VERSUS

TERRIBERRY, CARROLL & YANCEY; JAMES L. SCHUPP, JR.; D. KIRK
BOSWELL; AMBERY MARITIME LTD.; SOUTH PORT SHIPPING AGENCY; THE
U.S. MARSHAL'S SERVICE; THE DIRECTOR OF THE UNITED STATES
MARSHAL'S SERVICE,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

August 13, 1999

Before DAVIS, DUHÉ, and PARKER, Circuit Judges.

PER CURIAM:

Appellants appeal from a summary judgment granted against them in their suit for, *inter alia*, tortious interference with a contract.  Finding no error, we affirm.

I.

On May 15, 1996, the vessel M/V PAVLOGRAD was seized pursuant to state law on behalf of an alleged creditor of the Baltic Shipping Company ("Baltic"), which owned the vessel.  As a result of the seizure, the Russian crew of the vessel was constructively discharged from employment without payment of wages and other obligations.

On May 17, 1996, the Russian law firm of Egorov, Puchinsky,

Afanasiev & Juring ("Egorov"), was engaged by the crew to represent them for back wages and penalty wages against Baltic and against the vessel *in rem*. Pursuant to the agreement, Egorov was granted the exclusive right to negotiate a settlement and entitled to a fifty percent contingency fee on all sums recovered above the face value of the back wages. The agreement further stated that it could be terminated by ten (10) days written notice by either party; however, in the event of termination, Egorov would be entitled to receive fees based on its hourly rates. Egorov subsequently retained the firm of Weeks, Kavanagh & Rendeiro ("Weeks") to act as local counsel. During this entire time, the M/V PAVLOGRAD was still under a state writ of attachment. Some weeks later, the vessel was sold by sheriff's sale to Ambery Maritime Ltd. ("Ambery"), who engaged the firm of Terriberry, Carroll & Yancey ("Terriberry") to act as their counsel.

After Ambery purchased the vessel, it decided to hire the Russian crew on board in order to begin employing the vessel. On Ambery's instruction, Southport Shipping Agency ("Southport"), Ambery's local agent, paid the crew's outstanding back wages. Southport did not pay any penalty wages. According to appellants, Ambery, Terriberry, and Southport conspired together to meet secretly with the Russian crew and "settle" the matter without appellants' knowledge or involvement. Upon payment, the crew abandoned their outstanding claims for wages and penalties, discharged Egorov and Weeks, and sailed with the vessel as employees of the new owner, Ambery. Neither Egorov nor Weeks

received payment for any legal services pursuant to the agreement, and therefore brought the instant action alleging, *inter alia*, tortious interference by Terriberry and Southport with the plaintiff's contract with the Russian crew members of the M/V PAVLOGRAD. The district court granted summary judgment in favor of the Appellees, finding that there was no admiralty tort jurisdiction and that the claims do not pass muster under Louisiana state law. This appeal followed.

## II.

We review a district court's grant of summary judgment de novo. *See Lavespere v. Niagra Machine & Tool Works*, 910 F.2d 167, 177 (5th Cir.1990). Summary judgment is proper when the evidence, viewed in the light most favorable to the non-movant, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c).

Appellants have raised three issues on appeal. First, they contend that the district court erred in finding that their claims did not fall under federal admiralty jurisdiction; second, they argue that they stated valid claims against the U.S. Marshal; and third, they contend that the district court incorrectly determined that their claims were not viable under Louisiana state law.

A. Federal Admiralty Jurisdiction

"A party seeking to invoke federal admiralty jurisdiction over a tort claim must satisfy conditions both of 'location' and of 'connection' with maritime activity." *Jerome B. Grubart, Inc. v.*

3

*Great Lakes Dredge and Dock Co.*, 513 U.S. 527, 531-42, 115 S.Ct. 1043, 1047-53 (1995)(applying the test for determining admiralty jurisdiction as clarified in *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)). The district court concluded that appellants' claims failed under both prongs of the test.

We will assume without deciding that appellants' claims have a sufficient connection with a traditional maritime activity to satisfy the "connection" prong of the admiralty jurisdiction test. After careful review of this record and of the supporting law, however, we conclude that the "location" prong has not been met.

"A court applying the 'location' test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Grubart*, 513 U.S. at 534, 115 S.Ct. at 1048. In determining whether the tort occurred on navigable water, this court looks to where the alleged wrong took effect rather than to the locus of the allegedly tortious conduct. *See Wiedemann & Fransen APLC v. Hollywood Marine, Inc.*, 811 F.2d 864 (5th Cir.1987)(quoting *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 248, 266, 93 S.Ct. 493, 503, 34 L.Ed.2d 454 (1972)); *Kuehne & Nagel v. Geosource, Inc.*, 874 F.2d 283, 288-89 (5th Cir.1989). Both *Wiedemann* and *Kuehne* involved claims for tortious interference with contract that were dismissed for lack of admiralty jurisdiction. In both cases, it was determined that the impact of the tortious interference would be felt and "take effect" on land where the interfered-with contracts were to have been performed. Likewise, in this case, the

4

alleged tortious interference took effect on land where the appellants were attempting to perform their contract by recovering the crew's back and penalty wages. Like the panel in *Wiedemann*, we cannot see how the impact of this alleged tort could have been felt on navigable waters.

Under an exception to the general rule that the impact of the tort must be felt on navigable water, the appellants next contend that the "location" prong has been satisfied because they suffered an injury on land that was caused by a vessel on navigable water. This exception was created with the enactment of the Extension of Admiralty Jurisdiction Act in 1948. 62 STAT. 496 (1948)(current version at 46 U.S.C. § 740 (1975)).[1] By the Act's express terms, however, the injury must be caused "by a vessel." Appellants have cited *Gutierrez v. Waterman S.S. Corp.*, for the proposition that "there is no distinction in admiralty between torts committed by the ship itself and by the ship's personnel." 373 U.S. 206, 210, 83 S.Ct. 1185, 1188, 10 L.Ed.2d 297 (1963). However, the situation in *Gutierrez*, as well as in the vast majority of other cases in which admiralty jurisdiction has been predicated on the "consummated on land" provision of 46 U.S.C. § 740, involved physical injury or damage done by the vessel. Section 740, by its

___

[1]The Act provides:
> The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land.

46 U.S.C. § 740.

5

very terms applies to "damage" and "injuries". The loss of a potential recovery of attorney's fees is not easily analyzed under section 740. Nonetheless, since *Gutierrez*, the Supreme Court has clearly indicated that the Act means the vessel and her appurtenances, and does not include those performing actions for the vessel. *See Victory Carriers, Inc. v. Law*, 404 U.S. 202, 210-12, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971)(clarifying that jurisdiction in *Gutierrez* turned solely on the fact that the injury was caused by an appurtenance of the ship). Because the complained of conduct was not caused by the vessel itself or its appurtenances, appellants' claims do not fall under the ambit of 46 U.S.C. § 740.

Thus, because the impact of the alleged tort was felt on land rather than on navigable waters and because the damage was not caused by the vessel or her appurtenances, the "location" prong of the admiralty jurisdiction inquiry has not been met. The district court was correct in granting summary judgment in regards to those claims dependent on federal admiralty jurisdiction.

B. Jurisdiction over the U.S. Marshal

Because no federal admiralty jurisdiction exists in this case, appellants' claims of negligence against the U.S. Marshal Service cannot be brought under the Suits in Admiralty Act, 46 U.S.C. § 741, *et seq*. Absent another basis for jurisdiction over these federal defendants such as the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674, appellants' claims must be dismissed. Here, appellants' failure to file an administrative claim under the FTCA,

precludes its application.  *See Montoya v. United States*, 841 F.2d 102, 104 (5th Cir.1988).  Therefore, the district court was correct in disposing of these claims by summary judgment.

C.  Louisiana State Law

In the absence of admiralty jurisdiction, Louisiana state law controls the disposition of appellants' tortious interference claim.  In 1989, the Louisiana Supreme Court for the first time recognized a very limited cause of action for tortious interference with contract in the case of *9 to 5 Fashions v. Spurney*.  538 So.2d 228 (La.1989).  In *9 to 5*, the court held:

> It is not our intention, however, to adopt whole and undigested the fully expanded common law doctrine of interference with contract . . . [i]n the present case we recognize . . . only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person.

*Id*. at 234.  Numerous cases in this Court and various Louisiana courts of appeal since *9 to 5* have uniformly recognized the narrowness of Louisiana's tortious interference action.  *See, e.g., American Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386-87 (5th Cir.1991);  *White v. White*, 641 So.2d 538, 541 (La.App. 3d Cir.1994);  *Tallo v. The Stroh Brewery Co.*, 544 So.2d 452, 453-55 (La.App. 4th Cir.1989).  We recently observed that even the Louisiana appellate courts purporting to "expand" the cause of action have done so within the limited confines of *9 to 5.  See America's Favorite Chicken Co. v. Cajun Enter.*, 130 F.3d 180, 184 (5th Cir.1997); *see also Guilbeaux v. The Times of Acadiana*, 693 So.2d 1183, 1186 (La.App. 3d Cir.1997); *Neel v. Citrus Lands of*

*Louisiana, Inc.*, 629 So.2d 1299, 1301 (La.App. 4th Cir.1993). Here, there have been no allegations of a corporate officer intentionally and unjustifiably interfering with a contract between his corporate employer and the appellants. Indeed, appellants have failed to identify an individualized duty existing between themselves and their alleged tortfeasors that could give rise to the type of delictual liability established by the Louisiana Supreme Court in *9 to 5*.[2] Therefore, because appellants' allegations do not fall within the narrow parameters of Louisiana's tortious interference cause of action, their claims were properly disposed of in summary judgment.

### III.

For the foregoing reasons, the summary judgment granted by the district court is AFFIRMED.

---

[2] We decline to expand the list of protected duties encompassed by *9 to 5* to include those owed by Louisiana lawyers generally under the Louisiana Rules of Professional Conduct.