**LAKES OF GUM COVE HUNTING & FISHING, L.L.C., et al.**

v.

**WEEKS MARINE, INC., et al.**

**Weeks Marine, Inc.**

v.

**United States of America.**

**No. Civ.A. 99–2005.**

United States District Court, W.D. Louisiana, Lake Charles Division.

Nov. 19, 2001.

Donald Coleman Brown, James B. Doyle, Sr., Merrick J. Norman, Jr., Woodley Williams et al., Lake Charles, LA, Jennings B. Jones, Jr., CAmeron, LA, Matthew D. Heinrich, Lake Charles, LA, J. Rock Palermo, III, Bice & Palermo, Lake Charles, LA, for Plaintiffs.

James A. Cobb, Jr., Michael W. McMahon, Emmett Cobb et al., New Orleans, LA, Diogenis C. Panagiotis, Anthony Frederick Whitford, Lafayette, LA, Thomas B. Thompson, U.S. Atty.'s Office, Lafayette, LA, Peter G. Myer, U.S. Dept. of Justice, Washington, DC, William J. Flanagan, U.S. Atty.'s Office, Shreveport, LA, Peter G. Myer, U.S. Dept. of Justice, Washington, DC, for Defendants.

### MEMORANDUM RULING

TRIMBLE, District Judge.

Two motions are presently before the Court. The first is a Motion for New Trial (doc. 95), filed by Plaintiffs Lakes of Gum Cove Hunting & Fishing, L.L.C. and Lakes of Gum Cove Land, L.L.C. (collectively "Gum Cove"), pursuant to Federal Rule of Civil Procedure 59, seeking to set aside this Court's Memorandum Ruling (doc. 90) and Judgment (doc. 91) of August 24, 2001. This motion seeks reconsideration of six motions previously decided. The second is a Motion for Summary Judgment (doc. 98), filed by Defendant United States of America pursuant to Fed. R.Civ.P. 56, seeking to dismiss Gum Cove's Amended Complaint (doc. 94), which is the first time Gum Cove has sought relief from the United States.

For the reasons stated below, the Motion for New Trial by Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. (doc. 95) will be GRANTED. The Motion for Summary Judgment by the United States against Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. and Weeks Marine, Inc. (doc. 52) was previously denied and after reconsideration this motion will be DENIED. The Motion for Summary Judgment by Weeks Marine, Inc. against the United States (doc. 56) was previously denied because it was moot and after reconsideration this motion will be GRANTED, entitling Weeks Marine, Inc. to indemnity from the United States. The Motion for Summary Judgment by Weeks Marine, Inc. against Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. (doc. 59) was previously granted and after reconsideration this motion will be DENIED. The Motion for Summary Judgment by Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. against the United States (doc. 64) was previously denied and after reconsideration will be DENIED. The Motion to Strike a Declaration of Marco Rosamano (doc. 73) by Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. was previously denied because it was moot and after reconsideration it will be DENIED. The Motion to Strike Other Exhibits (doc. 84) by Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. was previously denied because it was moot and after reconsideration it will be DENIED. Additionally, the Motion for Summary Judgment by the United States against Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. (doc. 98) will be GRANTED.

# I. BACKGROUND

## A. Facts

This suit arises from efforts to dredge the Calcasieu River Ship Channel and dispose of the resulting dredged material (spoil). The United States Army Corps of Engineers maintains the Ship Channel and typically relies on the Lake Charles Harbor and Terminal District to obtain easements from shoreline landowners to provide areas to dump the spoil. Lakes of Gum Cove Land, L.L.C. ("Gum Cove Land") owns marshland real estate in Cameron Parish bordering the Ship Channel where allegedly 1,500,000 cubic yards of spoil were dumped by the M/V Dredge Tom James, which is owned by Weeks Marine Inc. ("Weeks"). Lakes of Gum Cove Hunting & Fishing, L.L.C. owns a lodge near the land and leases the land to provide an area for its customers to hunt and fish. Collectively, Gum Cove claims that the spoil contains toxic substances and was deposited on its land without its consent.

The land at issue in this case was encumbered by a written instrument filed in Cameron Parish, entitled "A Temporary Easement or Servitude Agreement,"[1] when Gum Cove Land purchased the property in October 1998. The Harbor and Terminal District obtained this easement from the prior owners, the Amoco Production Company ("Amoco"). But, the dredging project was not completed within the period of the original easement. The Corps of Engineers, without the assistance of the Harbor and Terminal District, sought an extension of the easement by a second written instrument, entitled "Right of Entry for Construction."[2] The legal effect of this second document forms the central issue of this dispute. Anthony Palermo, an owner of Gum Cove Land, signed this Right of Entry on April 19, 1999. Gum Cove contends that Anthony Palermo did not have authority to execute this agreement, and, alternatively, that the extension did not constitute effective consent to leave the spoil on the land permanently.

## B. Procedural History

Gum Cove originally brought suit in state court against three defendants: (1) Weeks Marine, Inc. ("Weeks"), the dredging contractor hired by the Corps of Engineers; (2) Captain Frank Gill, an employee of Weeks; and (3) the Lake Charles Harbor and Terminal District. Gum Cove alleged claims in negligence, trespass, strict liability, maritime law and articles 667, 2315 and 2317 of the Louisiana Civil Code. No relief was sought pursuant to any federal statute. The plaintiffs invoked federal maritime law, but the case was

---

1. This easement granted extensive rights and provided in part, the right to "construct, operate and maintain ... a dredged material disposal area on the land ... including the right to construct dikes, to deposit dredged material thereon, to accomplish any contours on said land for the purpose of accommodating the deposit of dredged material as necessary in connection with such works to borrow, excavate, and remove soil, dirt and other materials including dredged material from said land; to undertake any management practice designed to enhance use of or extend life of said land for the deposit of dredged material; to clear, cut deposit the spoil."

2. This Right of Entry for Construction provided in part:

 "The Owner ... grants ... an irrevocable right to enter upon the lands ... any time within a period of three (3) months ... in order to do work necessary to locate, construct, operate, maintain, alter, repair and patrol a dredged material disposal area, under the same terms and conditions and conditions as the attached Temporary Easement or Servitude Agreement dated April 28, 1998, which the District and the Owner are in the process of renewing."

brought in state court pursuant to the "saving to suitors" clause, which provides a forum in state court for admiralty claims under certain circumstances. 28 U.S.C. § 1333.

Weeks removed the case to federal court and claimed that Captain Gill and the Harbor and Terminal District were fraudulently joined to defeat diversity jurisdiction, because "a defendant cannot remove a case based upon general maritime or admiralty jurisdiction alone." *Zoila–Ortega v. B J–Titan Services, Co.*, 751 F.Supp. 633, 636 (E.D.La.1990).

On January 10, 2000, Weeks filed Civil Action Number 00–0065 seeking contribution or indemnity from the United States for the conduct of the Corps of Engineers. The two cases were consolidated on June 7, 2000 (doc. 40). On July 18, 2000, Gum Cove's Motion to Remand (doc. 8) was denied and the claims against Captain Gill and the Lake Charles Harbor and Terminal District were dismissed (doc. 47). On August 21, 2001, the dismissal of these defendants and the denial of the motion to remand was made final for the purposes of Federal Rule of Civil Procedure 54(b) (doc. 51), permitting opposing parties to take an appeal.

On August 24, 2001, this Court ruled on several summary judgment motions. On August 31, 2001, Gum Cove filed the motion for new trial seeking a reconsideration of these rulings. On August 30, 2001, Gum Cove filed an amended complaint seeking damages directly from the United States. On September 10, 2001, the United States moved for summary judgment arguing that the claims are time-barred.

## II. LAW AND ANALYSIS

### A. Admiralty Jurisdiction

■ It is necessary to decide whether to exercise admiralty jurisdiction, not only to determine whether Louisiana law or general maritime law will govern the merits of the case, but the jurisdictional question will determine whether Gum Cove's Amended Complaint is time-barred pursuant to the Suits in Admiralty Act, 46 App. U.S.C. §§ 741–52 or is still permissible pursuant to the Federal Tort Claims Act, 46 App.U.S.C. §§ 781–90

■ "A party seeking to invoke federal admiralty jurisdiction over a tort claim must satisfy conditions both of 'location' and of 'connection' with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge and Dock Co.*, 513 U.S. 527, 531–42, 115 S.Ct. 1043, 1047–53, 130 L.Ed.2d 1024 (1995) (applying the admiralty jurisdiction test set forth in *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)); *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 455–56 (5th Cir.1999). "A court applying the 'location' test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Grubart*, 513 U.S. at 534, 115 S.Ct. at 1048; *Egorov*, 183 F.3d at 456. The general rule in the Fifth Circuit is that the "impact" of torts must "take effect" on water to satisfy the location test. *Egorov*, 183 F.3d at 456. An exception to this general rule is provided by the Admiralty Extension Act, 46 App.U.S.C. 740.[3] *See Egorov*, 183 F.3d at 456. Any injury to property consummated on land when caused by a vessel on navigable waters is

---

**3.** The admiralty Extension Act provides in part: "The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." 46 App.U.S.C. 740.

within admiralty jurisdiction. *See* 46 App. U.S.C. § 740. The definition of a "vessel" includes its appurtenances. *See Egorov,* 183 F.3d at 456.

■ In this case, the damage to Gum Cove's property was caused by a vessel, or its appurtenances, on navigable water and even the uniquely land-based claim of trespass to land falls within the provisions of the Admiralty Jurisdiction Extension Act. *See, e.g., Nissan Motor Corp. v. Maryland Shipbuilding & Drydock Co.,* 544 F.Supp. 1104 (D.Md.1982) (exercising admiralty jurisdiction for trespass and nuisance when smoke and paint spray from ship damaged cars parked on dock); Petition of *New York Trap Rock Corp.,* 172 F.Supp. 638 (S.D.N.Y.1959) (exercising admiralty jurisdiction for trespass when barge was tied to dock without consent); *but see Dean v. Maritime Overseas Corp.,* 770 F.Supp. 309 (E.D.La.1991) (denying admiralty jurisdiction when woman fell down stairs in her home after inhaling vapors from a vessel on navigable waters several blocks away). The purpose of the Admiralty Extension Act "was to end concern over the sometimes confusing line between land and water, by investing admiralty with jurisdiction over 'all cases' where the injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land." *Grubart,* 513 U.S. at 531, 115 S.Ct. at 1047–48. In *Grubart,* the Supreme Court described the Admiralty Extension Act as a "congressional modification to gather the odd case into admiralty." *Grubart,* 513 U.S. at 531, 115 S.Ct. at 1048. Congress chose broad language when it used the term "caused by a vessel" and the act "embrace[s] a fault idea that is applicable initially to invoke even a no-fault concept." *Pryor v. American President Lines,* 520 F.2d 974, 982 (4th Cir. 1975) (denying admiralty jurisdiction for unseaworthiness claim when injury to longshoreman was not proximately caused by a vessel). Therefore, the "location"

requirement for admiralty jurisdiction is met in this case.

■ The "connection" test raises two issues. First, a court "must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce." *Grubart,* 513 U.S. at 534, 115 S.Ct. at 1048 (internal quotation marks and citations omitted). "Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart,* 513 U.S. at 534, 115 S.Ct. at 1048 (internal quotation marks and citations omitted). To determine whether admiralty jurisdiction exists, "the incident" must be analyzed at an "intermediate level of possible generality." *Grubart,* 513 U.S. at 538, 115 S.Ct. at 1051. For example, the "general features" of the facts of *Grubart,* which included massive flooding in downtown Chicago caused by a barge on a river that punctured an underwater tunnel while driving piles to protect the base of a bridge, were characterized as "damage by a vessel in navigable water to an underwater structure," *Grubart,* 513 U.S. at 539, 115 S.Ct. at 1051.

In this case, the activities of Weeks meet both elements of the "connection" portion of the test for admiralty jurisdiction. When comparing the conduct of Weeks with that of the vessel in *Grubart,* causing damage to land by intentional dumping of spoil dredged from a river bottom and causing damage to land by negligent pile driving of a river bottom, this Court concludes that the conduct is analogous for the purposes of both elements of the "connection" portion of the test for admiralty jurisdiction. Regarding the first element, the damage to land caused by dumping the spoil is potentially disruptive to maritime commerce because any delay or curtail-

ment of the dredging activity by requiring dumping spoil at sea would disrupt the commercial traffic on the Calcasieu River Ship Channel. The parties dispute whether Gum Cove's property was actually damaged by depositing the spoil, but any attempts to remove the spoil and repair the damage to the land could potentially disrupt maritime commerce. *See, e.g., Grubart*, 513 U.S. at 539, 115 S.Ct. at 1050. Regarding the second element of the "connection" requirement, the activities of Weeks on navigable waters, like that of the vessel in Grubart, should be characterized as "repair or maintenance work on a navigable waterway performed from a vessel." *Grubart*, 513 U.S. at 540, 115 S.Ct. at 1051. "When described in this way, there is no question that the activity is substantially related to traditional maritime activity." *Grubart*, 513 U.S. at 540, 115 S.Ct. at 1051. Therefore, both the "location" and the "connection" requirements of admiralty jurisdiction are met and this court will exercise admiralty jurisdiction.

## B. Sources of Substantive Law

 Regardless of the forum, federal district court or state court pursuant to the saving to suitors clause, the applicable substantive law in admiralty cases is the general maritime law. *See Chelentis v. Luckenbach S.S. Co.*, 247 U.S. 372, 379, 38 S.Ct. 501, 502, 62 L.Ed. 1171 (1918). No rule of trespass to land exists in maritime law, but "federal courts may borrow from a variety of sources in establishing common law admiralty rules to govern maritime liability where deemed appropriate." *Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.*, 959 F.2d 49, 53 (5th Cir.1992). "[I]n the absence of federal cases or an established federal admiralty rule on trespass, it would be more appropriate to apply general common law rather than state law which would 'impair the uniformity and simplicity which is a basic principle of the federal admiralty

law....'" *Marastro*, 959 F.2d at 53 (quoting *Nissan Motor Corp. v. Maryland Shipbuilding and Drydock Co.*, 544 F.Supp. 1104, 1111 (D.Md.1982)). "[T]he general common law and in particular the Restatement (Second) of Torts should control to determine the law of maritime trespass, in order to promote uniformity in general maritime law." *Marastro*, 959 F.2d at 53. The facts in *Marastro* involved maritime trespass, the unauthorized entry on a vessel, but the same goal of uniformity applies to a claim of trespass to land caused by a ship. *See Nissan Motor Corp.*, 544 F.Supp. at 1111. "[I]f different ports were to have different rules concerning whether legitimate maritime activity amounted to trespass or nuisance, the smooth flow of commerce would be adversely affected." *Id.* Therefore, this Court will apply the general maritime law and borrow from the general common law principles that do not contravene maritime law, relying primarily on the Restatement (Second) of Torts.

## C. Reconsideration of the Motions for Summary Judgment and Motions to Strike

 Even though the Federal Rules of Civil Procedure do not expressly recognize a motion for reconsideration, *see St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir.1997), a motion pursuant to Rule 59(e) is proper to reconsider manifest errors of law or fact or to present newly discovered evidence, but not an intervening change in the law. *See Waltman v. International Paper Co.*, 875 F.2d 468, 473–474 (5th Cir. 1989). District courts have considerable discretion in deciding whether to reopen a case on a motion for reconsideration. *See Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990).

A district court properly grants summary judgment when "the pleadings, de-

positions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must grant summary judgment if the nonmovant fails to establish the existence of an element essential to a case on which it bears the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). However, credibility determinations, weighing the evidence, and drawing legitimate inferences from the facts are functions for the trier-of-fact at trial, not for the judge on a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

After consideration of Gum Cove's Motion for New Trial and the opposition filed by Weeks, this Court will reconsider the motions decided by the Judgment and Memorandum Ruling of August 24, 2001 to correct an error of law. The prior ruling granting summary judgment to Weeks was based on the absence of any negligence by Weeks, but the ruling did not properly address the trespass claim.[4] The rulings will be addressed below in the order in which the motions were originally filed.

## 1. United States v. Gum Cove and Weeks (doc. 52)

█ Previously, this motion was denied, and after reconsideration this motion will be DENIED. The United States argues that the complaints filed by Gum Cove and Weeks should be dismissed because Gum Cove gave effective consent to deposit the spoil, evidenced by the Right of Entry for Construction. Gum Cove has raised a genuine issue of material fact regarding the issue the effectiveness. The parties dispute the authority of Mr. Palermo and Gum Cove's limited liability corporation operating agreement. Gum Cove argues that the Right of Entry is not enforceable, and alternatively Weeks and the United States exceeded the scope of consent that the Right of Entry could have provided. The Right of Entry is ambiguous regarding the scope of the entry that is permissible, and a trial is necessary to determine whether conduct by the representatives of Gum Cove established consent. The fact that the representatives of Gum Cove did not object during the dredging process is highly probative, but not dispositive of the issue.

## 2. Weeks v. United States (doc. 56)

█ Previously this motion was denied because it was moot, but after reconsideration this motion will be GRANTED. The United States only opposes the motion to the extent that Weeks seeks indemnification. The United States asserts that Weeks is only entitled to 100% contribution. There is no express basis for contractual indemnity. However, tort indemnity is appropriate in this case where any liability that will attach to Weeks will be due to an error by the United States.

---

4. The Restatement provides:
 "One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters land in the possession of the other, or causes a thing or a third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove."

Restatement (Second) Torts § 158 (1965). The meaning of "intent" is that "the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) Torts § 8A (1965). Therefore, all one must intend is to enter the land, not cause harm or knowingly enter without authority.

Weeks is entitled to indemnification from the United States.

 Generally, the body of law that governs a claim for indemnity or contribution is the same body of law that establishes the indemnitee's primary liability to the plaintiff. *See Hardy v. Gulf Oil Corp.,* 949 F.2d 826, 830 n. 7 (5th Cir.1992). Therefore, the general maritime rules of indemnity will apply in this case. Indemnity and contribution allow for distribution of damages between defendants held liable. Indemnity "permits one tortfeasor to shift all of the loss onto another tortfeasor, provided the other should appropriately answer for the entirety of the loss." *Hardy,* 949 F.2d at 829. Contribution "requires that each tortfeasor pay the proportion of the damages attributable to its actions." *Id.* "Indemnity between liable maritime tortfeasors is now available only 'where proportionate degrees of fault cannot be measured and determined on a rational basis.'" Hardy, 949 F.2d at 833 (quoting *United States v. Reliable Transfer Co.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975)). Non-negligent tortfeasors are entitled to indemnity when "the law imposes responsibility even though they committed no negligent acts." *Hardy,* 949 F.2d at 833.

When one party instructs another to commit a trespass, it is not possible to rationally determine proportionate degrees of fault. A fact finder could reasonably conclude that neither the Corps of Engineers nor Weeks was negligent, but consent may be found to be ineffective and both would be liable in trespass because they both intentionally caused a thing or third person to enter the land of another. *See* Restatement (Second) Torts § 158 (1965). Comparative fault principles do not readily apply to trespass, and it would not fit the rationale for contribution to simply grant Weeks 100% contribution, because a defendant who is not at fault would not be held liable at all in a negligence case. Trespass protects the interests of the landowner over those of trespassers that mistakenly believe that they are permitted to enter land, either by consent or legal privilege. *See* Prosser & Keeton, Torts 75 (5th ed.1985). This case is similar to one involving vicarious liability because the law might operate to hold Weeks liable without any negligence, only by virtue of its mistaken intentional conduct. In this case, it is appropriate to borrow the general common law rule that one who acts pursuant to directions of another and reasonably believed the directions to be lawful is entitled to indemnification. *See* Restatement (Second) of Torts § 668B(2)(b).[5] Applying this rule will not contravene the general maritime rule of

**5.** The Restatement provides:

(1) If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability. (2) Instances in which indemnity is granted under this principle include the following: (a) The indemnitee was liable only vicariously for the conduct of the indemnitor; (b) The indemnitee acted pursuant to directions of the indemnitor and reasonably believed the directions to be lawful; (c) The indemnitee was induced to act by a misrepresentation on the part of the indemnitor, upon which he justifiably relied; (d) The indemnitor supplied a defective chattel or performed defective work upon land or buildings as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect; (e) The indemnitor created a dangerous condition of land or chattels as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect; (f) The indemnitor was under a duty to the indemnitee to protect him against the liability to the third person.
The Restatement (Second) of Torts § 886B (1977).

indemnity, because, even though Weeks is not vicariously liable, Weeks is potentially a non-negligent tortfeasor and the law will impose responsibility even though it committed no negligent acts. *Cf., Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa,* 761 F.2d 229, 236 (5th Cir.1985) (allowing oil rig owner indemnity from manufacturer in products liability) (citing Restatement (Second) of Torts § 886B (1977)).

It is undisputed that Weeks acted pursuant to the instructions of the Corps of Engineers. Weeks did not exceed the scope of those instructions or act negligently in executing them. Additionally, only the Corps of Engineers could have obtained consent from Gum Cove Land. The Corps of Engineers solicited the work, established the parameters of the work, contracted for the work with Gum Cove Land, and designated the disposal areas for the spoil. Weeks was not under any independent duty to investigate whether the spoil contained hazardous substances. Weeks could have reasonable believed that the direction to dump the spoil was lawful, because the Corps of Engineers had agreed to obtain the necessary easements.

### 3. Weeks v. Gum Cove (doc. 59)

 Previously this motion was granted, but after reconsideration this motion will be DENIED. Weeks argues that it is not liable for trespass because the United States is vicariously liable for any torts that Weeks commits. (Weeks Mem. in Supp. at 6). This argument misstates.the doctrine of vicariously liability. First, the potential liability of the United States rests primarily on its own acts and not those of another person or entity for which its duty to answer is created by the law, because one who hires an independent contractor is generally not vicariously liable for its torts. *See generally,* Restatement (Second) of Torts §§ 409–29 (discussing independent contractors). The potential

liability of the United States turns on whether it caused Weeks to commit trespass. *See* Restatement (Second) of Torts § 158. Second, even if the United States were liable for the torts of Weeks, this is irrelevant when determining whether Weeks remains liable for the torts it commits.

Weeks incorrectly cites *M & A Farms, Ltd. v. Town of Ville Platte,* 422 So.2d 708 (La.App. 3rd Cir.1982), to support its argument that it should be dismissed from this case. In *M & A Farms,* the plaintiff sued the town directly for trespass, and the town sought contractual indemnification from its contractor. *See id.* The third-party claim was dismissed, because the contractor was not negligent and was following directions of the town's engineer. *See id.* at 713. This case would only provide support to Weeks if Gum Cove had sued the United States and the United States then sued Weeks.

Weeks must remain in this case even though it relied on the United States to obtain Gum Cove Land's consent. Weeks committed trespass if consent was not obtained, but Weeks is entitled to indemnity from the United States.

### 4. Gum Cove v. United States (doc. 64)

Previously, this motion was denied, and after reconsideration it will be DENIED. This is a cross-motion for summary judgment against the United States arguing that consent was not effective and the trespass claim may be decided as a matter of law. However, there are genuine issues of material fact regarding the effectiveness of consent. The authority of Anthony Palermo is disputed and issues of fact exist regarding Gum Cove Land's limited liability corporation operating agreement. Even if Mr. Palermo did not possess authority to bind Gum Cove Land, there are factual issues regarding whether consent

may be established by the conduct of the representatives of Gum Cove Land.

### 5. Reconsideration of Gum Cove's Motions to Strike

### a. Gum Cove's Motion to strike a declaration of Marco Rosamano (doc. 73)

■ Previously, this motion was denied because it was moot, but after reconsideration it will be DENIED. Gum Cove moves pursuant to Fed.R.Civ.P. 12(f) to strike the declaration of Marco A. Rosamano, attached as Exhibit B to the United States' Reply to Opposition to Motion for Summary Judgment and Opposition to Cross–Motion for Summary Judgment (doc. 69), because it is "prejudicial to the plaintiff, immaterial and irrelevant." (Gum Cove's Mot. to Strike at 1–2). A court may strike any matter that is "redundant, immaterial, impertinent, or scandalous." Fed.R.Civ.P. 12(f). For almost nine years, Mr. Rosamano has been an attorney in the real estate section of the New Orleans office of the Army Corps of Engineers and he drafted the Right of Entry signed by Mr. Palermo. Mr. Rosamano's declaration states, based on his experience and his understanding of the common practice of those involved in dredging wetlands in Louisiana, that spoil deposits increase the value of marshland property and that the Corps of Engineers has never removed spoil from a disposal site. These facts are material to determine whether any genuine issues of fact exist regarding the parties' reasonable expectations in executing the Right of Entry. The opinions expressed in the declaration are sufficiently based in the experience of Mr. Rosamano as a real estate attorney practicing in his specialized field. *See* Fed.R.Evid. 702. The declaration does not rise to the level of an impertinent or scandalous matter for the purposes of Fed. R.Civ.P. 12(f).

### b. Gum Cove's Motion to strike other exhibits (doc. 84)

Previously, this motion was denied because it was moot, but after reconsideration it will be DENIED. The motion seeks to exclude documents attached as exhibits A–E to Weeks's memorandum in opposition to the cross-motion for summary judgment of Gum Cove (doc. 75).

■ Exhibit A. Gum Cove objects to page 24 of the deposition of Marco Rosamano because it considers it to be hearsay. Gum Cove objects to any testimony of Mr. Rosamano, an attorney for the Corps of Engineers, regarding what he was told by David Richard, Amoco's land manager. Amoco was the landowner before Gum Cove and it executed the easement that encumbered the property when Gum Cove purchased the property. While it is unclear exactly what portions Gum Cove seeks to strike, it objects to the fact that Mr. Rosamano says that he was told by Mr. Richard that Gum Cove was Mr. Richard's client. This testimony is not offered to prove the fact that Mr. Richard was actually the land manager for Gum Cove, it is offered to explain Mr. Rosamano's understanding of who was required to sign the Right of Entry. This does not constitute hearsay and the statements of Mr. Rosamano will be admitted. Gum Cove's attorney objected during the deposition on the ground that the question called for speculation when Mr. Rosamano was asked, "Did he tell you that the signatures of both Anthony Palermo and Joe Palermo would be required for that temporary easement or servitude agreement?" This does not require speculation and it is admissible.

Exhibit B. Gum Cove objects to Exhibit B because it is not authenticated, but it is referenced in the deposition testimony of Mr. Rosamano and this proof of the writ-

ing's content and circumstances of the writing will render it admissible.

Exhibit C. Gum Cove objects to the easement between Amoco and Gum Cove because it argues that it is irrelevant. But, this document was expressly referenced in the Right of Entry signed by Mr. Palermo of Gum Cove Land, and it will not be stricken.

■ Exhibit D. Gum Cove objects to the Corps of Engineers spoil disposal plan because it is irrelevant. Even though the plan is for fiscal year 2000 and the dredging at issue in this case took place in 1999, it is relevant because it may tend to show that the construction site was understood to be permanent by all the parties. *See* Fed.R.Evid. 401.

■ Exhibit E. Gum Cove objects to pages 50–51 of the deposition of Mr. John Polansky testifying for the Terminal and Harbor District. Weeks cites the deposition excerpt because Mr. Polansky attended a meeting with Mr. Palermo on August 24, 1999, and Mr. Polansky did not recall Mr. Palermo objecting to the rights-of-way that had been obtained. While this evidence may not be highly probative, it is nonetheless relevant because it may ever so slightly tend to establish that representatives of Gum Cove gave consent, regardless of the terms of the Right of Entry, and it will not be excluded under the broad definition of relevant evidence provided by the federal rules. *See* Fed.R.Evid. 401.

**D. Summary Judgment by the United States v. Gum Cove (doc. 98)**

■■ Since the Admiralty Extension Act applies in this case, the United States is entitled to summary judgment against Gum Cove. Gum Cove concedes that this complaint is time-barred if its only remedy is pursuant to the Suits in Admiralty Act (SAA), rather than the Federal Tort Claims Act. The Admiralty Extension Act expressly provides, "[t]hat as to any suit against the United States for damage or injury done or consummated on land by a vessel on navigable waters, the Public Vessels Act or Suits in Admiralty Act, as appropriate, shall constitute the exclusive remedy for all causes of action...." 46 App.U.S.C. § 740. In this case, the Dredge Tom James is not a public vessel, so Gum Cove must pursue its claim against the United States pursuant to the waiver of sovereign immunity in the Suits in Admiralty Act, 46 App.U.S.C. §§ 741–752. Therefore, this claim is time-barred. The SAA has a two year statute of limitations. 46 App.U.S.C. § 745. "The two-year limitation on suits under the SAA can be tolled under appropriate circumstances where to do so would not defeat the purpose of the provision, which is to encourage those with claims against the United States to present their claims promptly and diligently, and where injustice to the plaintiff would otherwise result." *McCormick v. United States*, 680 F.2d 345, 351 (5th Cir.1982). Equitable tolling of the SAA is not appropriate in this case because Gum Cove had sufficient opportunity to bring its claim, injustice will not occur and the United States did not induce Gum Cove not to bring its claim and the United States did not fraudulently conceal material facts. *See, McCormick*, 680 F.2d at 350.

### III. CONCLUSION

For the reasons stated above, the Motion for New Trial by Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. (doc. 95) will be GRANTED. The Motion for Summary Judgment by the United States against Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. and Weeks Marine, Inc. (doc. 52) was previously denied and after reconsideration this motion will be DENIED. The Motion for Summary Judgment by Weeks Marine, Inc. against the United States

(doc. 56) was previously denied because it was moot and after reconsideration this motion will be GRANTED, entitling Weeks Marine, Inc. to indemnity from the United States. The Motion for Summary Judgment by Weeks Marine, Inc. against Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. (doc. 59) was previously granted and after reconsideration this motion will be DENIED. The Motion for Summary Judgment by Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. against the United States (doc. 64) was previously denied and after reconsideration will be DENIED. The Motion to Strike a Declaration of Marco Rosamano (doc. 73) by Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. was previously denied because it was moot and after reconsideration it will be DENIED. The Motion to Strike Other Exhibits (doc. 84) by Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. was previously denied because it was moot and after reconsideration it will be DENIED. Additionally, the Motion for Summary Judgment by the United States against Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. (doc. 98) will be GRANTED.

### JUDGMENT

Pursuant to the Memorandum Ruling of this date,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion for New Trial by Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. (doc. 95) is GRANTED; and

IT IS ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment by the United States against Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. and Weeks Marine, Inc. (doc. 52) was previously denied and after reconsideration this motion is DENIED; and

IT IS ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment by Weeks Marine, Inc. against the United States (doc. 56) was previously denied because it was moot and after reconsideration this motion is GRANTED, entitling Weeks Marine, Inc. to indemnity from the United States; and

IT IS ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment by Weeks Marine, Inc. against Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. (doc. 59) was previously granted and after reconsideration this motion is DENIED; and

IT IS ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment by Lakes of Gum Cove Land, L,L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. against the United States (doc. 64) was previously denied and after reconsideration is DENIED; and

IT IS ORDERED, ADJUDGED AND DECREED that the Motion to Strike a Declaration of Marco Rosamano (doc. 73) by Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing. L.L.C. was previously denied because it was moot and after reconsideration it is DENIED; and

IT IS ORDERED, ADJUDGED AND DECREED that the Motion to Strike Other Exhibits (doc. 84) by Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. was previously denied because it was moot and after reconsideration it is DENIED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment by the United

States against Lakes of Gum Cove Land, L.L.C. and Lakes of Gum Cove Hunting and Fishing, L.L.C. (doc. 98) is GRANTED.